*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2113**

Philip Carl Naatz, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent

**Filed July 28, 2014
Affirmed
Peterson, Judge**

Lyon County District Court
File No. 42-CV-13-616

Cecil E. Naatz, Marshall, Minnesota (for appellant)

Lori Swanson, Attorney General, Anne Catherine Fuchs, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Peterson, Judge; and Schellhas, Judge.

## UNPUBLISHED OPINION

**PETERSON**, Judge

Appellant seeks review of a district court order sustaining the revocation of his driver's license under the implied-consent statute. We affirm.

## FACTS

Marshall police officer Derick Determan was on routine patrol just after 3:00 a.m. when he stopped a vehicle driven by appellant Philip Carl Naatz because one of the vehicle's headlights was out. Determan noticed that appellant had trouble pulling over and operating his blinkers. While talking with appellant, Determan observed signs of alcohol consumption. Appellant admitted drinking four or five beers that evening. After appellant failed field sobriety tests, Determan arrested appellant and transported him to jail. Determan read appellant the implied-consent advisory, and appellant said that he understood the advisory. Appellant exercised his right to consult with an attorney, and then he agreed to submit to a breath test, which revealed an alcohol concentration of .12. Appellant's driver's license was revoked under the implied-consent statute, Minn. Stat. § 169A.52, subd. 4(a) (2012).

Appellant petitioned for judicial review of the order revoking his license, and the parties submitted the matter on an evidentiary record that included the police reports. Appellant narrowed the issues presented to the district court to whether the breath-test result should be suppressed based upon *Missouri v. McNeely*, 133 S. Ct. 1552 (2013). The district court made the following findings of fact: appellant's vehicle was stopped for a traffic violation; appellant was arrested for driving while impaired; the implied-consent advisory was read to appellant; appellant exercised his right to speak with an attorney; after conferring with an attorney, appellant agreed to take a breath test; and appellant's license was revoked after the test revealed that his alcohol concentration was .12. The district court concluded that appellant knowingly and voluntarily consented to

2

the breath test. The court denied appellant's petition to rescind the revocation. This appeal followed.

## DECISION

The Fourth Amendment protects the "right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV; *accord* Minn. Const. art. I, § 10. This right extends to people who are detained by police on suspicion of drunk driving and asked to submit to chemical testing for the presence of alcohol. *McNeely*, 133 S. Ct. at 1558 (blood testing). A warrant is necessary for such a search unless an exception to the warrant requirement applies. *Id.* When the facts are undisputed, the validity of a search is a question of law, which we review de novo. *Haase v. Comm'r of Pub. Safety*, 679 N.W.2d 743, 745 (Minn. App. 2004).

In *McNeely*, the Supreme Court held that "natural metabolization of alcohol in the bloodstream [does not] present[] a per se exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases" and that "exigency in this context must be determined case by case based on the totality of the circumstances." 133 S. Ct. at 1556. In *State v. Brooks*, 838 N.W.2d 563, 567 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014), the Minnesota Supreme Court acknowledged that, under *McNeely*, three warrantless searches of Brooks's blood and urine could not "be upheld solely because of the exigency created by the dissipation of alcohol in the body." But the supreme court also considered whether the searches could be upheld because Brooks consented to the searches. *Id.*

In the first incident, after Brooks was stopped for an apparent traffic violation, he showed signs of intoxication, was read the implied-consent advisory, sought advice of counsel, and agreed to provide a urine sample. *Id.* at 565. In the second incident, after Brooks was stopped because sparks were flying underneath his vehicle, he showed signs of intoxication, was read the implied-consent advisory, sought advice of counsel, and agreed to take a blood test. *Id.* In the third incident, Brooks was stopped while asleep behind the steering wheel of a running vehicle, showed signs of intoxication, was arrested and read the implied-consent advisory, sought advice of counsel, and agreed to a urine test. *Id.* at 565-66.

The supreme court analyzed the totality of the circumstances in each of the three incidents and applied the preponderance-of-evidence standard to determine the validity of the warrantless searches under the consent exception to the warrant requirement. *Id.* at 568-70. The supreme court rejected Brooks's claim that, because test refusal is a crime in Minnesota, his consent was coerced. *Id*. at 570. The supreme court held "that Brooks voluntarily consented to the searches . . . ." *Id.* at 569-70, 572.

The district court issued its order denying appellant's petition for rescission before the Minnesota Supreme Court released its opinion in *State v. Brooks*. But the district court applied essentially the same analysis to the warrantless search in this case as the supreme court applied to the searches in *Brooks*. Appellant's letter brief to this court acknowledges that the supreme court's decision in *Brooks* "would seem to be dispositive of this appellate issue" unless further review was granted in *Brooks*. Further review was not granted.

The district court record and findings show that police had reasonable grounds for stopping appellant's vehicle and for suspecting that appellant was under the influence; appellant was read the implied-consent advisory, said he understood the advisory, consulted with an attorney, and agreed to take a breath test. As in *Brooks*, these circumstances establish that the warrantless search was valid because appellant voluntarily consented to the search.

**Affirmed**.